**IN THE UNITIED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ISAAC PÉREZ SERRANO<br><br>PLAINTIFF<br><br>VS.<br><br>WAL-MART PUERTO RICO, INC, AND INSURANCE COMPANIES XYZ, JOHN DOE<br><br>DEFENDANTS | Case Civil Núm.:_____<br><br>RE:<br><br>Federal Civil Rights Act of 1991, 42 U.S.C. §§ 1981a, UNJUSTIFIED DISMISSAL (Law. No. 80 of May 30, 1976, as amended); DISCRIMINATION BY RELIGIOUS BELIEFS AND RETALIATION (Law. No. 100 of June 30, 1959, as amended); DAMAGES |

**COMPLAINT**

**TO THE HONORABLE COURT**:

Comes now, plaintiff, *Isaac Pérez Serrano*, represented by the undersigned attorneys, and very respectfully avers and prays as follows:

I. **THE PARTIES**

1.  The plaintiff, Isaac Pérez Serrano, of legal age, single, with physical and mailing address: Villa Contessa DD-23 Ave Los Millones, Bayamón Puerto Rico, 00956 and phone number: (787) 478-7813.

2.  The defendant is composed of WAL-MART PUERTO RICO, INC, a corporation duly incorporated according to the laws of Puerto Rico, with a resident agent at: 361 San Francisco Street 4th floor San Juan, PR 00901 and mailing address: PO. Box 9022946 San Juan, PR 00902-2946.

3.  The addresses of Insurance Companies A, B, C who might respond to the allegations of this lawsuit are unknown.

4.  The address of Company X, which might respond to the allegations of this lawsuit, is unknown.

5. The address of "Fulano de Tal" who might respond to the claims in question is unknown.

## II. THE FACTS

6. The plaintiff, Mr. Isaac Pérez Serrano (Mr. Pérez), began working for the co-defendant, Wal-Mart Puerto Rico, Inc. (Wal-Mart), on January 11, 2017.

7. The plaintiff, Mr. Pérez, worked for Wal-Mart for approximately 4 years, under an indefinite employment contract.

8. During the four (4) years of employee-employer relationship, Mr. Pérez met the expectations of his position and Wal-Mart policies, his employer.

9. Mr. Pérez worked as a "Butcher".

10. As part of his duties as a butcher, these included, but were not limited to: meat cutting, area cleaning, customer service, assisting in various departments such as bakery, and food preparation for sale.

11. Mr. Pérez earned an income of $14.00 per hour.

12. Mr. Pérez worked eight (8) hour shifts for a total of forty (40) hours per week, except for some weeks when he could work overtime.

13. Mr. Pérez is openly atheist and does not adhere to the Christian faith or any other religious belief as an Atheistic religious idea.

14. Around November 2020, Mr. Pérez began to experience discrimination based on his religious beliefs, in addition to being the target of a "religious preaching and/or conversion campaign" to the Christian faith.

15. The religious campaign included, but was not limited to, mockery, derogatory comments, subjecting him to Christian sermons, sacred music in his work area, written promotion (like flyers) on Mr. Pérez's locker where he kept his personal items during his work shift, and constant questioning of his beliefs.

16. Among the derogatory comments was calling him the ANTICHRIST in front of

coworkers.

17. Employees who participated in the behavior described in the previous paragraph include Enid Marrero, Alfredo Orama, and Eduard García. The ANTICHRIST comment was made by Osvaldo Alvelo Torres, the plaintiff's Team Leader.

18. In compliance with the company policy, the plaintiff filed a complaint with Mr. Ángel Camacho, the Meat Department Team Leader, in the presence of Osvaldo Alvelo Torres (Team Leader). The solution offered by management was to "ignore them".

19. Faced with management's inaction and the continuation of humiliating and degrading acts, Mr. Pérez filed another complaint with the Human Resources Manager, Valerie Diaz, who in response questioned him about his disbelief in God, such as, "Why don't you believe in God?", "Have you had many things happen in your life?", "Were you angry with God?", among others.

20. The plaintiff indicated that he did not wish to discuss the matter, he only wanted company policies to be upheld. company policies and allow him to work

21. The final outcome of the meeting with the Human Resources Manager was to tell Mr. Pérez, "Don't pay attention to him."

22. The acts and humiliations of a religious nature against the plaintiff never ceased. In response, the plaintiff filed several more complaints with Valeria Diaz, Human Resources Manager, and Madeline Serrano, General Manager.

23. Subsequently, a general meeting was held in which the prohibition on discussing politics or religion and the prohibition on using a speaker to listen to music were discussed with all employees.

24. Alfredo Orama is upset by the prohibition on using the speaker to listen to his Christian music and began to threaten the plaintiff because he knew that the plaintiff had complained about his speaker for listening to sacred music.

25. In response, the plaintiff complains to Melisa Báez, Manager of Bakery, Butchery, and

San Café (pizzeria), about his fear of Alfredo Orama's threats blaming him for the speaker prohibition, a situation that was supposed to be confidential.

26. The administration once again ignored the plaintiff's complaints.

27. Alfredo Orama continued preaching and playing a speaker with sacred music and Christian sermons to the plaintiff, and the administration continued to ignore the situation, despite Mr. Pérez's constant complaints.

28. After several complaints and attempts to exhaust the remedies offered by the employer in situations like his, the plaintiff was dismissed on June 19, 2021.

29. The plaintiff's dismissal is solely based on discriminatory motivations and is therefore illegal.

30. Prior to the dismissal, the plaintiff was subjected to discriminatory acts and retaliation, such as but not limited to: modifications to his work schedule, preferential shifts given to other Christian employees, in addition to the employer reversing a reasonable accommodation condition regarding the schedule to favor the Christian employee who led the religious campaign against the plaintiff.

31. Before the aforementioned acts began, the plaintiff had submitted a request for reasonable accommodation, indicating that he could not work before 7:00 am or after 8:00 pm.

32. In response, he was assigned the schedule of 7:00 am – 4:00 pm, and this remained until the plaintiff expressed his religious beliefs.

33. At the start of the situation with Mr. Orama, the plaintiff's schedule was modified to be assigned to Mr. Orama.

34. Following the dismissal, the plaintiff turned to the Department of Labor and Human Resources under the Puerto Rico Employment Security Act and was declared eligible under Section 4(B)(3), because the employer did not provide satisfactory information explaining the reasons for the dismissal.

35.  The defendant employer acted against its own policies, regulations, and employee manual, including but not limited to: Employee Manual, page 36, which states that no employee shall be subjected to any comment, negative action, or stereotype directed at their gender, race, religion, physical or mental disability, physical appearance, age, marital status, nationality, color, or sexual orientation.

36. In the same Employee Manual, on page 37, it instructs employees who are victims of discriminatory acts to immediately contact their supervisor or any member of the management team.

37. The plaintiff, in compliance with the above, exhausted all of the employer's resources to address his situation.

38.  On the other hand, the Employee Manual page 37 states, and I quote, "Immediate action will be taken and there will be no retaliation against the associate making the report, all allegations will be investigated. Appropriate action will be taken to eliminate the behavior and ensure it does not happen again." Additionally, it ensures the confidentiality of the complaint and the absence of retaliatory acts.

39. Unlike the employer, the plaintiff complied with the Employee Manual.

40. As part of the SPECIFIC WORK RULES, Employee Manual page 57 states that associates cannot have electrical appliances in any work area without prior authorization from their supervisor.

41. Despite this and the plaintiff's continuous complaints, the administration allowed Christian employees to put a speaker with sacred music in Mr. Pérez's work area.

42. Among the employees in charge of the speaker was Mr. Alfredo Órame.

43. As a result of the unjustified discriminatory dismissal and motivated by retaliatory acts, the plaintiff suffered and continues to suffer emotional damages.

44. After Mr. Pérez was dismissed, he filed complaint A1-D1-DP-0162-20 with the Department of Labor and Human Resources in the Standards Division.

45. The complaint mentioned in the previous paragraph was dismissed without prejudice and notified on December 2, 2021.

## III. CAUSES OF ACTION - REMEDIES SOUGHT

46. The Constitution of the Commonwealth of Puerto Rico, in its Bill of Rights, establishes that the dignity of the human being is inviolable, a fundamental and guiding principle of respect towards every individual. Its first section specifically states: "The dignity of the human being is inviolable. All men are equal before the law. No discrimination may be established on grounds of race, color, sex, birth, origin, or social condition, nor political or religious ideas."

47. The Federal Civil Rights Act of 1964, 42 U.S.C. §§ 1981-2000h-6; as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a., under which compensation seeks not less than $50,000.00.

48. Additionally, Law No. 80 of May 30, 1976, as amended and better known as the Severance Pay Law, 29 L.P.R.A. sec. 185, under which the right to payment of the corresponding Severance Pay in the amount of $7,092.32 is sought.

49. Law No. 115 of December 20, 1991, better known as the Retaliation Law, under which the plaintiff shall be entitled to double the amount determined to have caused the violation of the provisions of this Law under which the plaintiff seeks not less than $50,000.00.

50. Law No. 100 of June 30, 1959, as amended, better known as the "Employment Discrimination Act", 29 L.P.R.A. 46., under which the right to: (1) an amount equal to twice the amount of damages caused to the employee or job applicant; (2) or an amount not less than five hundred (500) dollars nor more than two thousand (2,000) dollars, at the discretion of the court, if pecuniary damages cannot be determined; (3) or double the amount of damages caused, if it is less than five hundred (500) dollars; and (b) will also incur a misdemeanor and, upon conviction, shall be punished by a

fine of up to five thousand (5,000) dollars, or imprisonment for a term not exceeding ninety (90) days, or both penalties, at the discretion of the court, under which compensation of no less than $50,000.00 is sought.

51. Article 21 of Act No. 69-1985, as amended 29 LPRA sec. 1341, under which the right to: (1) For an amount equal to twice the amount of damages that the act has caused to the employee or applicant for employment; (2) or for an amount not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000), at the discretion of the court, if pecuniary damages cannot be determined; (3) double the amount of the damages caused if it is less than one hundred dollars ($100), and (b) will also incur in a less serious crime and, if convicted, will be punished with a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), or imprisonment for a term of not less than thirty (30) days nor more than ninety (90) days, or both penalties, at the discretion of the court, under which compensation of no less than $50,000.00 is sought.

52. As a result of the discriminatory dismissal, plaintiff has suffered and will continue to suffer until the day a judgment is issued in his favor and thereafter for a reasonable period, a loss of wages and loss of earnings equivalent to the amount he would have earned if plaintiff had not been subject to the discriminatory acts that has injured his emotional health.

53. Pursuant to the applicable laws and jurisprudence mentioned in this COMPLAINT, damages and losses in the amount of one hundred thousand dollars ($100,000.00) are sought, along with a sum for attorney's fees not less than 15% of the amount claimed.

**WHEREFORE**, we respectfully request this Honorable Court to grant the present COMPLAINT, and consequently Order the defendant to pay no less than $250,000.00 and the sum of $7,092.32  for severance pay, and a sum for attorney's fees not less than 15% of the

amount claimed as required by the relevant law, with any other pronouncement in law that may be appropriate and arise from the allegations contained in this complaint and judicial proceeding.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today September 26th, 2024.

**ATTORNEYS FOR PLAINTFF**

***s/ María Soledad Lozada Figueroa***
María Soledad Lozada Figueroa
USDC No. 222811

Loira 1641 El Cerezal
San Juan, P.R. 00926
Phone: (787) 533-1400
Email: msl@lozadalaw.com

**S:/ Milagros Rivera Rivera**
Milagros Rivera Rivera
USDC No. 305909

P.O. BOX 50823, TOA BAJA PR 00950
Tel. No. (787) 525-3290
email: lcda.riveramilagros@gmail.com